E. H. DARBY, Individually, and d/b/a E. H. Darby & Co.

*v.*

SUPERIOR SUPPLY COMPANY d/b/a Superior Components.

458 S.W.2d 423

(*Knoxville,* September Term, 1970.)

Opinion filed September 8, 1970.

COURTNEY, TROST, LEECH & HARDIN, Columbia, for appellants.

MARK J. MAYFIELD, Chattanooga, for appellee.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

E. H. Darby, a resident of Florence, Alabama, bought an order of mahogany lumber from Superior Supply

Company, a Tennessee corporation with its principal place of business at Chattanooga, Tennessee. Darby bought the lumber for his personal use at his home in Florence, Alabama, the order therefor resulting from correspondence and telephone calls between the parties, without Darby ever entering the State of Tennessee. The lumber was delivered to Darby's agent at Superior's plant in Chattanooga and carried to Florence, Alabama. After delivery Darby found he could use only a part of the lumber because of its dimensions. He used this, paid for it, and notified Superior he could not use the balance and would hold it for Superior. Subsequently Superior sued Darby for the balance claimed, $3,639.48 and interest, serving process on him in Alabama by means of Tennessee's long arm statute, sec. 20-235 T.C.A. Darby sought to have the suit abated on the ground the Tennessee court did not have jurisdiction over him, the attempted service of process being void because in violation of the due process clause of the Constitution of the United States. Darby conceded the validity of the long arm statute, as such, but challenged its use in his case because of the total absence of any activities on his part in the State of Tennessee other than the receipt of the goods for interstate carriage.

Another issue was raised subsequent to the plea in abatement: whether the first order, having been submitted and accepted in writing, was modified by a subsequent, valid parole amendment of the order changing the dimensions of the lumber to be supplied by Superior. Accompanying this issue was the question, whether or not the order, if it had been amended, had been rejected by Darby in time to avoid an acceptance of it on his part.

On these issues, the trial court and the Court of Appeals sustained the service of process as valid under the long arm statute, overruled the defenses based on the order and its rejection, and gave the plaintiff judgment. We granted certiorari. We reverse on the ground that the service of process in this particular case was void, being contrary to the due process of law clause of the Fourteenth Amendment of the Constitution of the United States.

In *Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565, the Supreme Court of the United States held that a personal judgment rendered without personal service of process against a nonresident of the state, or the defendant's appearance in the action upon service by publication, was void.

Subsequently, in *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, this rule was modified. In the course of its opinion in this case the Court said:

"Historically the jurisdiction of courts to render judgment in personam is grounded on the de facto power over the defendant's person. Hence, his presence within the territorial jurisdiction of the court was prerequisite to its rendition of a judgment personally binding him. * * But, now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In the course of its opinion in *International Shoe* the Court also said:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make a binding judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

It is worthwhile noting that *International Shoe* did not spring full formed from the Supreme Court in 1945. As early as 1926, in the case of *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, the United States Supreme Court recognized that a state, by virtue of its special interest in the potentially hazardous activities of a nonresident within its borders, might exercise jurisdiction over him by virtue of that activity. And, in the case of *Henry L. Doherty & Co. v. Goodman,* 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935), the United States Supreme Court held that Iowa could exercise jurisdiction over a nonresident who dealt in securities through an agent in the state, even though the nonresident individual had never been present in the state. The ground of that decision was that "Iowa treats the business of dealing in corporate securities as exceptional and subjects it to special regulation."

These two cases recognizing that activities of a defendant in which the state had a right to have a special interest as expressed by its legislature could be brought to court without personal service of process, were the forerunners of *McGee v. International Life Insurance*

*Company,* 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957).

In *McGee,* the petitioner, a Californian, recovered a judgment against the defendant on an insurance contract. The defendant was a foreign corporation which never did business in California, which had never had an agent in the state, and whose only contact with California was the insurance policy in question. Texas, the home state of the insurance company, refused to enforce judgment obtained by the plaintiff. On these minimum contacts the Supreme Court of the United States held that California properly acquired jurisdiction. That the contract provided a substantial enough connection with the state. It reasoned that the witnesses would be in California; California was the place of delivery; and it was the residency of the insured. However, the real basis of the opinion was the recognition by the court of the special interest that a state has in protecting its residents with respect to insurance contracts sold in the state, insurance being universally recognized as a business affected with a degree of public interest, and so subject to regulation and treatment different from ordinary business.

In the following year, the United States Supreme Court decided *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). That case involved a controversy over the right to a part of a trust estate settled in Delaware by a Delaware resident who subsequently moved to Florida. The trustee was a Delaware corporation which had no contacts with Florida, so when a Florida court attempted to assert jurisdiction by publication this was resisted. The trustee never appeared, but an appearing party moved to dismiss for failure to

acquire jurisdiction over the trustee, who was an indispensable party. The Florida court sustained jurisdiction but the United States Supreme Court held that no jurisdiction had been acquired over the trustee. It reasoned that restrictions on jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. "They are a consequence of territorial limitations on the powers of the respective states. However minimal the burden, there must be minimal contacts." The Court distinguished *McGee* on the ground California had enacted special legislation to exercise its manifest interest in providing effective redress for citizens injured by insurance companies. It also distinguished *McGee* on the additional ground that the cause of action in that case arose from defendant's activities in the state, whereas, in *Hanson* there were no such activities. The Court then went on to say that in order to be subject to jurisdiction, a nonresident must do some act by which he "purposefully avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protection of its laws."

In setting forth this background, *Olberding v. Illinois Central Railroad Co.*, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953), must not be overlooked. In that case the United States Supreme Court observed that, "what may be 'fair play' and 'substantial justice' as to corporations may not be such as to individuals, and cases involving corporations should be received cautiously as precedent for cases involving individual defendants".

By calling attention to this holding, we do not indicate that the due process language of *International Shoe* would not apply to individuals, although it is dictum as to such. To the contrary, the reasoning in the case would

apply with equal force to the assertion of jurisdiction over individuals where the assertion of such jurisdiction would not amount to denial of fair play and substantial justice, as suggested by *Olberding.*

With this liberalization of the due process clause as affecting serving of process it was inevitable that state statutes would be enacted to take advantage thereof. Illinois appears to have been one of the first, enacting its long arm statute in 1955. Illinois Revised Statutes 1955, Ch. 110, para. 16, 17. Subsequently New York, Tennessee and Massachusetts adopted identical statutes. And the Illinois statute became the model for statutes enacted by a number of other states.

■ Although defendant Darby concedes the constitutional validity of the Tennessee statute, contending only that it has no application in the present case, we think we should declare its validity as a matter of our own judgment, and do so, see *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673, (upholding the Illinois statute) and we hold that our statute, sec. 20-235 et seq. T.C.A. (See Footnote[1]), was enacted with the intention to assert juris-

---

[1] "20-235. *Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—Persons who are non-residents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

"(a) The transaction of any business within the state;

"(b) Any tortious act or omission within this state;

"(c) The ownership or possession of any interest in property located within this state;

"(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

"(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

"'Persons' as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."

diction over nonresident defendants to the extent permitted by the due process clause. *Southern Machine Co., Inc. v. Mohasco Industries, Inc.,* 6 Cir., 401 F.2d 374.

But, even so, we are of opinion, as before indicated, that the statute does not apply in the present case. Tested by the rule laid down in *McGee,* that a nonresident must do some act by which "it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.", the service of process in this case is invalid.

■ Adverting to the factual situation, we have a case where a nonresident individual, without ever entering the State of Tennessee, consummated by interstate mail and telephone calls, a retail purchase of a modest amount of mahogany lumber to be used for his own personal benefit. While Superior had some trouble filling the order, this did not arise from its unusual nature, since it was simply for mahogany boards of normal dimensions. And in any event, when Superior found it could not supply the boards according to the order it gained consent to fill the order from available stocks. In other words, the order required no special manufacturing operations in Tennessee which could be charged to defendant as activities caused by him in Tennessee by his interstate order. The only act of defendant in Tennessee was the acceptance of the lumber onboard a truck he sent to Superior's mill for that purpose.

■ So, the question boils down simply to this: In an ordinary, single, retail sale transaction, where the purchaser never enters the State of Tennessee until the purchase contract has been consummated, and thereafter his only connection with the State of Tennessee is the

acceptance of the delivery by an agent in Tennessee, is this a purposeful availing of the privilege of conducting activities in Tennessee and is it an invocation of the benefits and protection of its laws?

The question answers itself in the negative. What are the activities, that are not interstate? Where are the benefits? What protection of the law was required that is not extended to every interstate transaction? To each question the honest answer must be "none".

The alternative would be a holding that every retail order in interstate commerce accepted in Tennessee would subject the purchaser to the jurisdiction of the courts of Tennessee without regard to whether the purchaser ever entered into the state and purposefully availed himself of the privilege of conducting activities here and thus invoking the benefits and protection of our laws. For, in every such interstate purchase, the goods must be turned over to someone for carriage, and there is not enough real difference between delivery for carriage to a personal agent of the purchaser as opposed to an impersonal agent bailee such as a common carrier to justify process in one case and deny it in the other. The "quality and quantity" of the act are the same in either instance, and have the same "relationship to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

In reaching this conclusion we have considered the cases relied on by the Chancellor and the Court of Appeals, and we find not one that matches this one in total absence of instate activity.

We have also considered numerous other cases, particularly those annotated in 27 A.L.R.3rd, 397, and we

find that in these cases the trial tribunal has sought only to apply the rule laid down in *McGee*, as explained by *Hanson*, the the particular state statute involved allows. We, of course, can do the same, and nothing else, so other cases are of little help. Of course, a case on all fours would deserve and receive our consideration but we have not found one. The only case we have found involving a suit on a retail sale account where service of process has been sustained is *Harry Winston, Inc. v. Waldfogel*, 292 F.Supp. 473, (1968 D.C.N.Y.). This was an action for the purchase price of a piece of jewelry, $53,000.00. Service of process under the New York statute which is like ours was sustained because the Massachusetts purchaser made two visits to New York negotiating the purchase of the ring. The instate activity of the purchaser distinguishes that case from this one.

In conclusion we should mention that reference in this opinion to the interstate character of the transaction involved was only for the purpose of emphasizing the absence of either qualitative or quantitative instate activity. We also emphasize that this case has not been decided solely on the ground the defendant never entered Tennessee in the course of the transaction involved. We have decided the case as we have because, viewed in its entirety, we are of the opinion it fails to meet the test laid down in *International Shoe, McGee,* and *Hanson.*

The judgments of the lower courts are set aside and the case is dismissed.

DYER, CHIEF JUSTICE, and CRESON, JUSTICE, and JENKINS, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, dissents.

## Dissenting Opinion

Mr. Justice McCanless.

I disagree with the majority of the Court and must dissent from their opinion. I do agree that Sections 20-235 to 20-340, inclusive, Tennessee Code Annotated, enacted as Chapter 67 of the Public Acts of 1965, are valid. As the majority opinion demonstrates, they themselves violate no rights guaranteed by the Constitutions of the United States and by the State of Tennessee. The question for our determination is whether the application of the statute constitutes a violation of any such rights under the facts of this suit. In my opinion it does not.

The defendant placed his order for the lumber with the complainant by long distance telephone. The complainant fabricated it at its plant in Chattanooga and delivered it to the defendant, through his representative, onto a truck that the defendant had sent to Chattanooga.

I am of opinion that the defendant thus had "the necessary minimum contacts" with the complainant in Tennessee to justify service of process on him through the Secretary of State under the provisions of Section 20-236, Tennessee Code Annotated, and my "sense of fair play" is not offended by my view that he be required to have his rights and obligations adjudicated in this cause pursuant to the service that was had on him under that section. My examination of the authorities cited in the majority opinion and of others that I have read persuade me that the result reached by the Chancellor and by the Court of Appeals was correct and that the majority opinion of this Court unduly restricts the application of the statute. I would affirm.