**Robert D. GARRETT, an individual, d/b/a R. D. Garrett & Associates**

**v.**

**R. H. MACY & COMPANY, INC.**

**Civ. A. No. 7760.**

United States District Court,
E. D. Tennessee, N. D.

July 24, 1972.

---

Jon E. Jones, Maddux, Moore & Jones, Cookeville, Tenn., for plaintiff.

Bernard H. Cantor, Johnson City, Tenn., Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, hereinafter called Garrett, the purchaser of certain accounts as defined in Article 9 of the Uniform Commercial Code, filed this action against defendant, hereinafter called Macy, to recover the purchase price of 300 chairs sold and delivered to Macy on Long Island in New York City. Before the action was commenced, Macy claimed that it had paid the amount which Garrett now claims to the holder of a perfected security interest in all accounts of the Athens Chair Company. Garrett denies that Macy has paid the full amount of the debt to Rawleigh, Moses & Company, Inc., hereinafter called Rawleigh, by reason of a factoring agreement entered into on October 30, 1969 between Athens and Rawleigh.

Service of process was made upon the defendant pursuant to Tennessee's long-arm statute. T.C.A. §§ 20–235 [1] and 20–236.[2]

Macy has moved for an order quashing the return of service of summons on the grounds: (a) that it is a corporation organized under the laws of the State of New York and was not and is not subject to service of process in the Eastern District of Tennessee; and (b) that it has not been properly served. Thus is raised the question of whether Macy is subject to process in Tennessee under what is commonly referred to as the Tennessee long-arm statute heretofore mentioned.

Macy is a New York corporation which operates department stores in the State

---

1. "20–235. *Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.—* Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

"(a) The transaction of any business within the state;

"(b) Any tortious act or omission within this state;

"(c) The ownership or possession of any interest in property located within this state;

"(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

"(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

"(f) Any basis not inconsistent with the constitution of this state or of the United States.

"'Person' as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."

2. "20–236. *Service on secretary of state—Forwarding by registered mail—Personal representatives of deceased defendants—Time for appearance—Registered mail refused.—*Service of such process shall be made by lodging (by plaintiff or his attorney) the original summons and a copy certified by the clerk of the court in which action is brought, with a fee of six dollars ($6.00), with the secretary of state, who shall promptly send, postage prepaid, the certified copy by registered return receipt mail to the defendant, along with a written notice that service was so made . . . ."

of New York. It had not qualified under the Tennessee Domestication Laws to do business in Tennessee and does not maintain an office or have a telephone listed in Tennessee. It has no personnel assigned to Tennessee and does not regularly ship goods into or advertise its goods for sale in Tennessee. Athens Chair Company, Inc. was a Tennessee corporation, but is now in bankruptcy in this Court. Garrett is a citizen of the State of South Carolina. In June, 1971, Athens' New York resident selling agent solicited an order for recliner chairs from Macy's Buyer of Traditional Upholstery. Negotiations which were conducted in New York only led to an oral agreement reached in New York under the terms of which Athens would sell the 300 chairs to Macy. Macy claims that the chairs were selected from Athens' catalogue of standard products which was supplied by Athens' New York agent and that no modifications were required to meet Macy's specifications. Garrett claims that the chairs were specially manufactured for Macy in Tennessee. We do not believe that the decision of this issue between the parties is necessary for a decision on the jurisdictional question.

After the oral agreement had been reached, Athens mailed Macy its invoice for the sale, which was received by Macy in New York City. The invoice specified that payment was to be made in Columbus, Georgia to Garrett. Macy then issued its purchase order dated June 28, 1971 in New York. It specifies that New York law would control. The purchase order also specifies Athens as the only payee. Pursuant to the contract between the parties, Athens shipped the chairs, freight prepaid, to Macy's warehouse in Long Island City, New York, where they were inspected and accepted. None of the personnel of Macy entered Tennessee in connection with the transaction. Not any of the negotiations were made with any person in Tennessee in connection with the transaction. Solicitation of the order was not made in Tennessee.

■ On October 30, 1969, Athens had entered into a factoring agreement with Rawleigh whereby Athens agreed to sell all of its present and future accounts to Rawleigh and warranted that it would not sell or assign any such accounts to another factor. This agreement was executed for Athens by Garrett, who was then President of the Company. However, due presumably to the financial distress of Athens, Rawleigh refused to finance the chair transaction with Macy and Athens was therefore forced to procure the money from some other source, which happened to be Garrett. Garrett claims that since Rawleigh refused to finance the transaction it waived any lien or claim that it might have otherwise had arising out of the account from the sale of the chairs. This claim goes to the merits of the case which cannot be decided in the disposition of the present motion.

On November 5, 1969, Rawleigh's security interest in Athens' accounts was perfected by filing with the Secretary of the State of Tennessee a financing agreement claiming present and future accounts as collateral. As of September 29, 1971, it appears that Athens was in default under its agreement with Rawleigh. Macy claims that this Court lacks *in personam* jurisdiction over it and for that reason the service of process should be quashed.

■ Since this is a diversity case, we are required to follow the rules of Tennessee regarding assertion of *in personam* jurisdiction over non-residents to the extent such rules are consistent with due process under the Federal Constitution. We accordingly start with the case of Darby v. Superior Supply Company, 458 S.W.2d 423, a case decided by the Tennessee Supreme Court on September 8, 1970. In that case, Darby, a resident of Florence, Alabama, bought an order of mahogany lumber from Superior Supply Company, a Tennessee corporation with principal place of business at Chattanooga, Tennessee. He bought the lumber for his personal use at his home in Florence, the order therefor resulting

from correspondence and telephone calls between the parties without Darby entering the State of Tennessee. The lumber was delivered to Darby's agent at Superior's plant in Chattanooga and carried to Florence, Alabama. After delivery, Darby found he could use only a part of the lumber because of its dimensions. He used that part and paid for it, and notified Superior he could not use the balance and would hold it for Superior. Subsequently, Superior sued for the balance claimed of $3,639.48 and interest, serving process on him in Alabama by means of the Tennessee long-arm statute. Darby sought to have the suit abated on the ground that the Tennessee court did not have jurisdiction over him, the attempted service of process being void because of violation of the due process clause of the Constitution of the United States. Darby claimed that the Tennessee long-arm statute did not apply to him due to the absence of any activities on his part in the State of Tennessee other than the receipt of the goods for interstate carriage. The Court, before reaching a decision, reviewed many of the cases dealing with *in personam* jurisdiction, starting with the old case of Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, a case with which every law student is familiar. The Court pointed out that the Supreme Court of the United States held that a personal judgment without personal service of process against a non-resident of the state by service of publication was void. In International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the rule was modified, said the Tennessee Supreme Court. The Court quoted from the *Shoe Company* case, in part, as follows:

". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

458 S.W.2d p. 424.

Again,

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make a binding judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

p. 424.

In the case of McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), McGee, a Californian, recovered a judgment against the defendant on an insurance contract. The defendant was a foreign corporation which never did business in California and never had an agent in California. Its only contact with California was the issuance of the policy that was the subject of the suit. The Supreme Court held that on these minimum contacts California properly acquired jurisdiction; that the contract provided a substantial enough connection with the state. The Court recognized "the special interest that a state has in protecting its residents with respect to insurance contracts sold in the state, insurance being universally recognized as a business affected with a degree of public interest, and so subject to regulation and treatment different from ordinary business," which was the real basis for the decision.

In the following year the Supreme Court decided Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. That case involved a controversy over the right to a part of a trust estate settled in Delaware by a Delaware resident who subsequently moved to Florida. The Florida Court attempted to assert jurisdiction over the Delaware corporation but the trustee never appeared except to move to dismiss for failure to acquire jurisdiction over the trustee who was an indispensible party. The United

States Supreme Court held that no jurisdiction had been acquired over the trustee. It pointed out that restrictions on jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. "They are a consequence of territorial limitations on the powers of the respective states. However minimal the burden, there must be minimal contacts." The *McGee* case was distinguished on the ground that California had enacted special legislation to exercise its manifest interest in providing effective redress for citizens injured by insurance companies. It also distinguished *McGee* on the ground that the cause of action in that case arose from the defendant's activities in the state whereas in the *Hanson* case there were no such activities. The Court pointed out that in order for a non-resident to be subject to jurisdiction, it must do some act by which it "purposefully avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protection of its laws."

The Tennessee Supreme Court concluded that T.C.A. § 20–235 et seq., was enacted with the intention to assert jurisdiction over non-resident defendants to the extent permitted by the due process clause, citing Southern Machine Co., Inc. v. Mohasco Industries, Inc., 401 F.2d 374 (C.A.6). The Court further held that the Tennessee statute did not apply to *Darby*, stating in part:

"   .   .   .   Tested by the rule laid down in McGee, that a nonresident must do some act by which 'it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'   .   .   ."

458 S.W.2d p. 426.

In the course of the opinion, the Court stated further:

"   .   .   .   In other words, the order [Darby's order] required no special manufacturing operations in Tennessee which could be charged to defendant as activities caused by him in Tennessee by his interstate order. The only act of defendant in Tennes-

see was the acceptance of the lumber onboard a truck he sent to Superior's mill for that purpose."

pp. 426, 427.

■ Garrett's attorney claims that the chairs which Macy purchased were manufactured under special order and that the last quoted language from the Supreme Court of Tennessee supports his contention that Macy's activity in Tennessee in having the chairs made to its *special order* is sufficient to give the Court *in personam* jurisdiction over Macy. We do not agree for at least two reasons: First, the affidavit of Macy's employee who was familiar with the transaction, stated that the chairs were not made under a special order but were chosen from a catalogue and were, therefore, made under an inventory order. Second, we have been cited to no authority and have not found any by an independent investigation that goods manufactured at the instance of a non-resident are per se an activity of a non-resident within the forum state which renders him subject to the jurisdiction of a forum court.

In the case of Southern Machine Co., Inc. v. Mohasco Industries, Inc., supra, a case decided about two years prior to the *Darby* case, the Court held that the defendant entered into a licensing agreement for plaintiff to manufacture and sell tufting machine attachments and contemplated marketing of the machines in Tennessee and other states where a machine so manufactured had in fact been sold in Tennessee, the agreement had a direct impact on commerce in Tennessee and such impact was foreseeable at the time the agreement was executed, and defendant had therefore purposefully availed itself of the privilege of transacting business in Tennessee so as to satisfy the requirement of *in personam* jurisdiction by Tennessee. The Court pointed out the three requirements for the exercise of jurisdiction under the Tennessee long-arm statute as follows:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Sec-

ond, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

■ The record in this case does not show that Macy availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee. The cause of action did not arise from Macy's activities in Tennessee and the acts of Macy or the consequences caused by Macy did not have a substantial enough connection with Tennessee to make the exercise of jurisdiction over Macy reasonable.

A more recent Tennessee case is that of Budget Rent-A-Car, Inc. v. Car Services, Inc., 225 Tenn. 342, 469 S.W.2d 360 (1971). In that case, plaintiffs were residents of Tennessee. They purchased a franchise from an Illinois corporation. Some years after the purchase, they sold the business to another corporation. Plaintiffs later sued for compensatory and punitive damages claiming that the original seller of the franchise and other defendants had conspired to force them to sell the business. Two employees of the defendant Illinois corporation had been in Tennessee on five different occasions negotiating the original franchise agreement with plaintiffs. The Court held that jurisdiction could not be had of the nonresident corporate defendant under the long-arm statute, saying:

"The record, however, shows that neither the corporation through its representative nor Jules W. Lederer ever engaged in any activity in Ten-

nessee which authorizes service under this Section of the Code."
p. 362

As heretofore pointed out, Athens' agent in New York solicited the order for the 300 chairs in New York, all the negotiations which led to the oral agreement for the sale and purchase of the chairs occurred in New York, and the chairs were selected by the buyer from Athens' catalogue of standard products. Subsequent to the agreement made in New York, representatives of Macy talked with representatives of Athens concerning the date and place for the shipment of the goods. The Court must conclude from these facts that Macy's contacts with Tennessee were not sufficient to give this Court in *personam* jurisdiction.

■ Telephone calls by the non-resident to the forum state alone are not sufficient to give the forum court jurisdiction. The totality of events relied upon by Garrett do not show that Macy had the minimal contacts with Tennessee necessary to give this Court jurisdiction, and to assume jurisdiction would offend "traditional notions of fair play and substantial justice."

As pointed out by the Court in Oswald Industries, Inc. v. Gilmore, D.C., 297 F. Supp. 307, a buyer of goods is more successful in asserting jurisdiction in his forum in suits against the seller than a seller in invoking jurisdiction in suits against the customer. See 20 A.L.R.3d 1201 et seq. for collection of cases. Also, Golden Belt Manufacturing Co. v. Janler Plastic Mold Corp., 281 F.Supp. 368 (M.D.N.C., 1967); Beal v. Caldwell, 322 F.Supp. 1151 (E.D.Tenn., 1970).

Accordingly, defendant's motion to dismiss for lack of jurisdiction must be sustained.