**John Michael PICKENS,
Plaintiff-Appellant,**

v.

**Richard and Patricia HESS,
Defendants-Appellees.**

**No. 76–2098.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1978.
Decided April 10, 1978.

Charles G. Black, Michael T. Hartsfield, Memphis, Tenn., for plaintiff-appellant.

Ed M. Hurley, Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The question in this case is whether the defendants were subject to the *in personam* jurisdiction of the United States District Court for the Western District of Tennessee. That court held that the acts of the defendants in relation to the subject of the law suit were "not substantial enough in the State of Tennessee to make the exercise of jurisdiction under the circumstances reasonable." We affirm the district court's dismissal of the action.

The plaintiff is a building contractor in Memphis, Tennessee, who entered into a contract to construct a residence for the defendants on property owned by them in Wynne, Arkansas. After the residence was about sixty percent completed the defendants requested the plaintiff to stop work and turn the project over to them for completion. After attempts to settle their dispute failed this action for breach of contract was brought in the district court. Jurisdiction was based on diversity of citizenship and the defendants were served with process pursuant to Tennessee's long arm statute, Tennessee Code Annotated § 20–235.[1]

After hearing arguments on the defendants' motion to dismiss, the district court withheld ruling to permit the parties to develop the facts by depositions. It is uncontradicted that plaintiff learned of the intention of the defendants to construct a residence in Wynne, Arkansas through a notice which was posted at a Memphis lumber yard. The notice was a "Dodge report," familiar to the building industry as a source of information concerning planned construction projects. The information upon which a series of reports relating to the Hess residence was based had been given to a reporter for F. W. Dodge Co. by Robert Smith, a Memphis architect who was employed by the defendants to design their home. Smith testified that distribution of the Dodge reports relating to defendants' residence was not limited to Memphis; they were "probably" distributed to subscribers

1. Tennessee Code Annotated 20–235.

20–235. Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(a) The transaction of any business within the state;

(b) Any tortious act or omission within this state;

(c) The ownership or possession of any interest in property located within this state;

(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

(f) Any basis not inconsistent with the constitution of this state or of the United States.

"Person" as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative. [Acts 1965, ch. 67, § 1; 1972 (Adj.S.), ch. 689, § 1.]

in several states. The architect also stated that plans and specifications were placed in three "plan rooms" in Memphis and at the defendants' place of business in Wynne, Arkansas.

Plaintiff testified that he had never done work involving Smith's architectural firm at the time he saw the Dodge report, but was interested in doing residential construction in Cross County, Arkansas and went to see Smith. He obtained a set of plans and specifications, with attached documents including "Instructions to Bidders." These instructions provided that sealed bids would be received by the "Owner"—*i. e.*, the defendants. Nevertheless, when plaintiff had prepared a bid he took it to Smith at his office in Memphis. Smith thought plaintiff was too low and would get "burned" on his proposed bid, and suggested that he rework it. Plaintiff then discovered he had overlooked an entire page of specifications and he refigured the job. This resulted in a new bid, some $15,000 higher than the previous one. This bid was addressed to the defendants in Wynne, Arkansas, but was delivered to the architect in Memphis.

Smith testified that he did not reject plaintiff's first proposal; that plaintiff was young and he, Smith, was just trying to give him some "fatherly" help. The architect also testified that he did not "receive" the written bid delivered to him by plaintiff after his oversight was discovered, but merely agreed to convey it to the defendants for their consideration. He stated that he was supervising several projects in the Wynne area and was required to go there at least once each week. At about this time the plaintiff began working on another construction job in Wynne and he talked with the defendants about their residence several times. The defendants made no decision until some six months after receiving plaintiff's bid, at which time plaintiff learned that they wanted to renegotiate. Plaintiff testified that he talked with the defendants in Arkansas and talked with Smith in both Tennessee and Arkansas about "alternates" and modifications to the plans and specifications that might be undertaken to reduce the cost. Plaintiff admitted that he never

talked with the defendants in Tennessee. The defendants stated in affidavits that they were in Tennessee in connection with the building project only once—a single trip to Memphis to look at brick after the job was well along.

Though it is undisputed that the defendants had no discussions with the plaintiff in Tennessee, the plaintiff contends that Smith was the agent of the defendants and that Smith and the plaintiff had numerous negotiating sessions in Memphis. Smith testified that he may have discussed the Hess job "superficially" with plaintiff in Tennessee, but all negotiating was done by the defendants themselves in Arkansas. Smith denied that he was the agent of the defendants or that he had any authority to negotiate for them. He testified that he had an oral contract with Mr. and Mrs. Hess by which he was to prepare plans and specifications and supervise the construction of their home. Smith also stated that all his contacts with the defendants were in Arkansas and he never discussed the plans with them in Memphis. Though plaintiff was the only builder who delivered a bid to Smith, the architect testified that several contractors contacted the defendants in Arkansas about the project. It was also Smith's testimony that after the plaintiff and defendants had agreed on modifications and the contract price at a meeting in Arkansas, he prepared a construction contract on a standard A.I.A. form and forwarded it to plaintiff with instructions for execution. Plaintiff testified that he signed the contract in Memphis and took it to Wynne where the defendants signed.

■ The district court made a finding that all negotiations between the plaintiff and the defendants took place in Arkansas. The plaintiff attacks this finding by reference to his own testimony. He ignores the uncontradicted evidence that the defendants were never in Tennessee in connection with the construction and that all of their contacts with the plaintiff took place in Arkansas. Further, to the extent the plaintiff seeks to rely on the alleged agency of

the architect Smith, his position is undercut by Smith's positive testimony that he never negotiated with the plaintiff on behalf of the defendants. It is noteworthy that the Dodge reports from which plaintiff learned of the project provided that the owner would negotiate. The district court was required to resolve all conflicts in the evidence, and it is clear that this conflict was resolved against the plaintiff. The finding is supported by substantial evidence and is not clearly erroneous. Rule 52(a), Fed.R. Civ.P.

■ The plaintiff also charges that the district court erred in finding that Smith was not the agent of the defendants, asserting it is uncontradicted that Smith was authorized to receive bids at his office in Memphis. The instructions to bidders provided that the owner would receive bids. Smith testified that he merely transmitted the plaintiff's bid to the defendants. Pickens also relies on a standardized addendum to his contract with the defendants to establish his claim that Smith was the agent of Mr. and Mrs. Hess. The contract between plaintiff and defendants included the terms of AIA Document A201, General Conditions of the Contract for Construction. Article 7.1.1 of that document provides that it shall be governed by the law of the place where the project is located—Arkansas in the present case. Arkansas follows the "general rule" that an architect is not a general agent of the owner, but is an agent whose authority is limited to that expressly granted by the owner. In *Bono v. Universal Tank & Iron Works, Inc.*, 239 Ark. 924, 395 S.W.2d 330, 332–33 (1965), the Supreme Court of Arkansas adopted the following statement from 5 Am.Jur.2d, p. 668:

> When engaged in supervising the construction of a building as an agent of an owner, an architect's ordinary authority is a limited one. He has no authority * * * to bind his principal by a contract respecting the erection of a building or the performance of work upon it, or to modify the existing contract between the owner and the builder. . . .

The testimony of Smith is consistent with such limited authority. He stated that he had virtually no contact with the parties from the time plaintiff submitted his bid and the attempt seven months later to find ways of reducing it. He testified that his only act involving plaintiff when he "entered the picture" again after seven months was to attend a meeting at the defendants' place of business in Arkansas. His role at that meeting, he said, was to approve or disapprove, from an architectural point of view, proposed changes agreed to by the plaintiff and the defendants. He testified that prior to the meeting in Wynne the plaintiff prepared a list of revisions to the plans and specifications and submitted them at the meeting. According to Smith, all he could do was recommend for or against proposed modifications; he had no authority to bind the defendants. The witness also stated that his role after the dispute arose between plaintiff and defendants was likewise limited to one of advising the defendants that in his opinion there had been a breach of the contract. We find nothing in AIA Document A201 which is inconsistent with Smith's testimony concerning his authority.

■ It is not necessary that we determine the precise legal relationship between the architect and owner under the facts of this case. All contacts between the defendants and the plaintiff and the defendants and Smith took place in Arkansas. A careful reading of the district court's order discloses that it does not hold that Smith was not the agent of defendant for any purpose, but only that he was not their agent "for the purpose of establishing jurisdiction." It further found that even if Smith was an agent of the defendants there were no acts in the State of Tennessee which were substantial enough to make the exercise of jurisdiction reasonable. These findings are supported by Smith's testimony. On the basis of these findings the district court concluded that—

> . . . the defendants have not purposefully availed themselves with [sic] the privilege of acting in Tennessee or

causing consequences in Tennessee on the mere basis of engaging an architect in Memphis and having the architect in Memphis advertise in the State of Tennessee and elsewhere for bids on the plans and specifications for the Arkansas residence.

The jurisdictional reach of a United States District Court in a diversity case is determined by the law of the state where it is located. This court has determined that it was the intention of the Tennessee legislature in enacting T.C.A. § 20–235 to comprehend "the full jurisdiction allowable under the Fourteenth Amendment." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 377 (6th Cir. 1968). In *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated that two requirements must be met for the service of process beyond the borders of a state to be valid: there must be minimum contacts with the forum state, and out-of-state service in the particular circumstances must not offend traditional notions of fair play. Cautioning that no mechanical or quantitative criteria are available, the Court stated:

Whether due process is satisfied must depend rather upon the quality and nature of the activity [of the defendant] in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. [citations omitted] *Id.* at 319, 66 S.Ct. at 160.

Treating the requirement of "minimal contacts" as the key, the Supreme Court held in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that neither isolated acts of the defendant within the forum state nor unilateral acts of one claiming some relationship with a nonresident defendant are sufficient to satisfy the requirement. Relying on its earlier decision in *International Shoe, supra*, the Court held, ". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus involving the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240.

In *Southern Machine Co. v. Mohasco Industries, Inc., supra*, 401 F.2d at 381, this court distilled the holdings of *International Shoe Co. v. Washington, supra; Hanson v. Denckla, supra*; and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), into three basic requirements for satisfaction of due process standards when *in personam* jurisdiction is asserted beyond the borders of a state on the basis of a single act within the forum state:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. (footnote omitted).

See also *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972).

In upholding the jurisdiction of a district court in Tennessee over a nonresident corporation the court in *Southern Machine* concluded that several facts were immaterial; *e. g.*, where the contract was executed and whether any agents of the defendant were physically present in Tennessee. 401 F.2d at 382. On the other hand, the court emphasized that the nonresident defendant had entered into a contract which contemplated a continuing business relationship with the Tennessee plaintiff, and held that the state "has a continuing interest in this continuing relationship . . . ." *Id.* at 385.

In *King v. Hailey Chevrolet Co.*, 462 F.2d 63, 66–68 (6th Cir. 1972), the court applied the three-step analysis prescribed in *South-*

*ern Machine Co. v. Mohasco.* This analysis led to a finding that a nonresident defendant had purposefully availed itself of an opportunity to transact business in Tennessee and was subject to the long arm statute, in part because it should have reasonably foreseen that the transaction in question would have consequences in Tennessee. See *Kroger Co. v. Dornbos,* 408 F.2d 813 (6th Cir. 1969), for application of these concepts to a case where jurisdiction over a nonresident was upheld on the basis of a claim that torts committed outside the state resulted in injury within the state.

The plaintiff contends that the district court erred as a matter of law. He argues that he proved more than the "minimal contacts" with Tennessee required by the controlling cases and that he was entitled to choose his forum. He relies strongly on *Temco, Inc. v. General Screw Products, Inc.,* 261 F.Supp. 793 (M.D.Tenn.1966). That case is clearly distinguishable from the present one because there the District Judge found that virtually all the negotiations occurred in Tennessee. The resulting contract required the Wisconsin defendant to furnish component parts to be used in a manufacturing process in Tennessee. There was clearly a purposeful availment of the privilege of doing business in Tennessee and substantial consequences in Tennessee flowed from the contract.

■ The plaintiff also cites *Barnhart v. Madvig,* 526 S.W.2d 106 (Tenn.1975). In *Barnhart* the court found that there was no jurisdiction over a nonresident defendant who had not purposefully availed himself of any privilege or benefits within Tennessee. Plaintiff appears to argue that Barnhart holds that the addition of subsection (f) extended the reach of § 20–235. We do not so read the opinion. Subsection (f), which was added in 1972, provides for jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Before subsection (f) was added to the statute this court and the courts of Tennessee had held that its reach extended

to the limits of due process. We likewise find no help in *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973). There the court held that a promise to perform a customized contract obligation within the forum state provided a sufficiently substantial connection to support jurisdiction over a nonresident defendant. The decision is clearly correct, but it has no application to the facts and circumstances of the present case.

■ We find no basis for concluding that the district court erred in applying controlling authority to the facts of the present case. Though the defendants did employ a Tennessee architect and a Tennessee builder, we do not view these facts as establishing a purposeful availment of benefits or privileges extended by the State of Tennessee. No continuing business relationship was established with the Tennessee plaintiff and the defendants had no reason to believe that their contract with Pickens would have substantial consequences within Tennessee. Furthermore, the cause of action between the parties did not arise from any acts of the defendants in Tennessee. As in *Capital Dredge & Dock Corp. v. Midwest Dredging Company,* 573 F.2d 377 (6th Cir. 1978), the plaintiff in the present case failed to satisfy the requirements of *Southern Machine, supra,* and the district court so held. In doing so the district court did not apply the *Southern Machine* rule mechanically, but made the ultimate finding required by due process considerations—that under the facts of this case it would not be reasonable for a Tennessee court to exercise jurisdiction.

In *Darby v. Superior Supply Co.,* 224 Tenn. 540, 458 S.W.2d 423 (1970), the Supreme Court of Tennessee applied the principles enunciated by the Supreme Court of the United States to a breach of contract action and found that service of process on a nonresident defendant violated his due process rights. The contacts between the defendant and Tennessee were easily as great as those found to have occurred in the

present case. The Tennessee Court held that they did not satisfy the "minimum contact" requirement of *International Shoe.* The *Darby* court found that the defendant had availed himself of no particular benefits or law of Tennessee by agreeing over the telephone and by correspondence to purchase lumber there and sending an agent to pick it up. These facts speak of greater availment than was shown in the present case where the defendants never dealt with the plaintiff in Tennessee and conferred with him in Arkansas a number of times with respect to the construction contract.

■ The modern view of the limits on a court's jurisdiction over nonresidents who are not served within its territorial limits is quite different from the rule laid down in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878). Nevertheless the restrictions imposed on such jurisdiction by the due process clause remain quite real. Though most courts now take a more expansive view of such jurisdiction, as Chief Justice Earl Warren wrote in *Hanson v. Denckla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238, ". . . it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." See also *Shaffer v. Heitner,* 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), where the Court concluded that all claims of jurisdiction, both *in personam* and *in rem,* must be evaluated in light of the standards of *International Shoe* and its progeny. The Tennessee legislature and Supreme Court have adopted this more expansive view of *in personam* jurisdiction of state courts, but the Court has consistently recognized that the reach of such jurisdiction must be limited by the contours of due process. *Barnhart v. Madvig, supra; Darby v. Superior Supply Co., supra.* Applying the same principles, we conclude that the district court did not err in dismissing this action for lack of jurisdiction over the defendants and insufficiency of service of process.

The judgment of the district court is affirmed.