IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2025 Session

## SCOTT MATERIALS, INC. v. S.T.A. FINANCIAL, INC., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 24-1121-1      Patricia Head Moskal, Chancellor**

_____

**No. M2025-00144-COA-R3-CV**

_____

This is an action for breach of contract and violations of the Tennessee Consumer Protection Act (the "TCPA"). The defendants, who are Minnesota residents and who have no business activities in Tennessee except for this one transaction with the plaintiff, responded to the complaint by filing a Tenn. R. Civ. P. 12.02 motion to dismiss for lack of personal jurisdiction and failure to state a claim on which relief could be granted. The trial court granted the motion on both grounds. This appeal followed. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and VALERIE L. SMITH, JJ, joined.

Dan E. Huffstutter, Nashville, Tennessee, for the appellant, Scott Materials, Inc.

J. Ross Pepper and Peter D. Suglia, Nashville, Tennessee, for the appellee, S.T.A. Financial, Inc. and Scott Anderson.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Scott Materials, Inc. ("Plaintiff") is a Tennessee corporation operating a soil and mulch business in Nashville, Tennessee. In April 2024, Plaintiff began negotiations with Premier Tech Technologies, Limited ("Premier Tech") to purchase automated bagging equipment to support its business operations.[1] On June 10, 2024, Premier Tech quoted the bagging machine Plaintiff desired to purchase at $845,052.

_____

[1] The complaint states that Premier Tech is located in Rivére-du-Loup, Québec, Canada.

Realizing that Plaintiff needed financing, Premier Tech referred Plaintiff to S.T.A. Financial, Inc. ("S.T.A.") and its president, Scott Anderson (collectively "Defendants"), to obtain financing.[2] Based on the recommendation of Premier Tech, Plaintiff contacted Defendants,[3] after which Plaintiff and Defendants exchanged emails and phone calls to facilitate financing for the purchase of bagging equipment from Premier Tech. As the complaint states, by mid-August 2024, Mr. Anderson told Plaintiff he was unable to obtain the desired financing for the $845,052 purchase price and recommended Plaintiff consider purchasing a less expensive bagging machine from Premier Tech. Following negotiations between Plaintiff and Premier Tech, Plaintiff agreed to purchase a different model bagging machine from Premier Tech for $667,829.

Based on the revised purchase agreement, Defendants emailed Plaintiff three Equipment Lease Approval Commitments. Then, on August 28, 2024, Plaintiff executed the commitment documents in Nashville, emailed the executed documents to Defendants and sent, by bank wire transfer, a deposit of $46,237.49 to S.T.A.'s Wells Fargo account.[4]

As stated in the complaint, by early September "Plaintiff began to have serious concerns about the transactions being presented by Defendant." The complaint goes on to state that Plaintiff discovered S.T.A. "is not qualified to do business in the state of Tennessee," and "was not licensed to be a credit service provider in the state of Tennessee." For these and other reasons, "Plaintiff informed Defendant Anderson it desired not to proceed any further and to please return the Deposit." Defendants refused to return the deposit.

Then on September 24, 2024, Plaintiff commenced this action for breach of contract and violations of the TCPA,[5] seeking to have the loan commitments declared void and the deposit refunded. Plaintiff also requested treble damages under Tennessee Code Annotated § 47-18-109(a)(3) and attorney's fees under Tennessee Code Annotated § 47-18-109(e)(1).

Defendants responded to the complaint by filing a Tenn. R. Civ. P. 12.02 motion to dismiss on two grounds: for lack of personal jurisdiction and failure to state a TCPA claim on which relief could be granted. The motion was supported by the affidavit of Scott Anderson, the president and sole shareholder of S.T.A., who stated that he is a resident of

---

[2] The complaint states that S.T.A. is a Minnesota corporation with its principal executive office in Long Lake, Minnesota.

[3] The complaint states that Plaintiff "contacted Defendant Anderson" on June 10, 2024, the same day Premier Tech made the referral.

[4] The complaint states that the deposit was for "credit report expenses, loan origination fees and for the first three (3) installment payments."

[5] Plaintiff also asserted a claim under the Tennessee Credit Services Business Act, Tenn. Code Ann. § 47-18-1001 *et seq.*, but Plaintiff voluntarily dismissed the claim, and it is not at issue in this appeal.

Minnesota and that S.T.A. is a Minnesota corporation with its principal and only place of business in Minnesota. He also stated that S.T.A. is not registered to do business in Tennessee, does not target Tennessee, has no physical presence in Tennessee, and cannot be said to have continuous and systematic contact with Tennessee. He further stated that "S.T.A. does not now, nor has it ever worked with any Vendors that were Tennessee residents," that he arranges financing "from lenders located outside of Tennessee" for which the loan payments are to be paid to the lenders outside of Tennessee, that the only reasons S.T.A. or he had any contact with Plaintiff, or the state of Tennessee was because Premier Tech referred Plaintiff to them.

Plaintiff filed a response to the motion that was supported by the affidavits of David Scott and Matt Scott, the co-owners and president and vice president, respectively, of Plaintiff. The affidavits, which were substantively identical, supported the allegations in the complaint while providing additional details.

Following a hearing on the motion to dismiss, the court granted the motion on both grounds asserted by Defendants. Regarding the personal jurisdiction issue, after correctly noting that "the plaintiff has the burden to show a prima facie case of personal jurisdiction," the chancellor found:

> [T]he Court first has to answer whether the plaintiff has made a prima facie showing that sufficient minimum contacts exist between the defendant and the state of Tennessee. In order for those contacts to be sufficient, they must arise out of the defendants' own purposeful, deliberate actions directed toward the forum state, and it must be based on some action that the defendant has purposefully availed itself of the privilege of conducting activities within Tennessee and invoking the benefits and protection of its law.
>
> The connection with Tennessee must not only be intentional, but substantial enough. . . .
>
> In considering whether the defendants' contacts are substantial enough to give rise to specific personal jurisdiction, the Court should consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts.

Applying this standard, the chancellor found Defendants' contacts with Tennessee to be "very limited" and insufficient to support personal jurisdiction. The chancellor also ruled that the complaint failed to state a TCPA claim on which relief could be granted. Construing Tennessee Code Annotated § 47-18-104(b)(14), the court first found the statute to be "limited to consumer transactions," and therefore inapplicable to the instant case. Additionally, addressing Tennessee Code Annotated § 47-18-104 (b)(2), the court held that "the complaint does not allege likelihood of confusion or misunderstanding as to the

source, sponsorship, or approval of its equipment financing services," which would be necessary for a claim to succeed under this subsection. Thus, all claims were dismissed.

This appeal followed.

## ISSUES

Plaintiff raises one issue on appeal:

Did Defendants have sufficient "minimum contacts" to give rise to Tennessee jurisdiction over Defendants? [6]

Defendants presented no additional issues.

## STANDARD OF REVIEW

The standard of review for the issue at hand is explained in *Crouch Railway Consulting, LLC v. LS Energy Fabrication, LLC*, 610 S.W.3d 460 (Tenn. 2020):

A defendant may challenge the existence of personal jurisdiction by filing a motion to dismiss the complaint under Rule 12.02(2) of the Tennessee Rules of Civil Procedure. The defendant may choose to support the motion with affidavits or other evidentiary materials. If a defendant does so, the plaintiff must respond with its own affidavits or other evidentiary materials. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015); *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 644. However, a Rule 12.02(2) motion is not converted to one for summary judgment when the parties submit matters outside the pleadings. *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn. 2013); *Gordon*, 300 S.W.3d at 644.

The plaintiff bears the burden—albeit not a heavy one—of establishing that the trial court may properly exercise personal jurisdiction over a defendant. *First Cmty. Bank*, 489 S.W.3d at 382; *Gordon*, 300 S.W.3d at 643. When a defendant supports its Rule 12.02(2) motion with affidavits or other evidentiary materials, the burden is on the plaintiff to make a prima facie showing of personal jurisdiction over the defendant through its complaint and affidavits or other evidentiary materials. To make a prima facie showing of personal jurisdiction under Tennessee law, the factual allegations in the plaintiff's complaint, affidavits, and other evidentiary materials must establish sufficient contacts between the defendant and Tennessee with reasonable particularity. *First Cmty. Bank*, 489 S.W.3d at 383.

---

[6] Plaintiff does not appeal the dismissal of its TCPA claim; thus, it is not at issue in this appeal.

In evaluating whether the plaintiff has made a prima facie showing, the trial court must accept as true the allegations in the plaintiff's complaint and supporting papers and must resolve all factual disputes in the plaintiff's favor. *Sumatra*, 403 S.W.3d at 739. However, the court is not obligated to accept as true allegations that are controverted by more reliable evidence and plainly lack credibility, conclusory allegations, or farfetched inferences. *First Cmty. Bank*, 489 S.W.3d at 382. Nevertheless, the court should proceed carefully and cautiously to avoid improperly depriving the plaintiff of its right to have its claim adjudicated on the merits. *Gordon*, 300 S.W.3d at 644.

A trial court's decision regarding the validity of personal jurisdiction over a defendant presents a question of law. We therefore conduct a de novo review of the trial court's decision with no presumption of correctness. *First Cmty. Bank*, 489 S.W.3d at 382; *Gordon*, 300 S.W.3d at 645. In other words, in this appeal, we conduct the same evaluation of [the] complaint and the parties' affidavits and supporting papers relating to [the defendants'] Rule 12.02(2) motion as the trial court.

*Id*. at 470-71.

### ANALYSIS

The dispositive issue in this appeal is whether Tennessee has specific personal jurisdiction over Defendants. As our Supreme Court has explained:

The authority of a Tennessee court to exercise personal jurisdiction over a nonresident defendant is first defined by statute. *See generally Sumatra*, 403 S.W.3d at 740-41 (discussing the history of Tennessee's long-arm statutes); *Gordon*, 300 S.W.3d at 645-46 (same). Tennessee law provides, in part, that a nonresident is subject to the jurisdiction of a Tennessee court not only as to any action or claim for relief that arose from "[e]ntering into a contract for services to be rendered . . . in this state," but also on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(5), (6) (2009); *see also* Tenn. Code Ann. § 20-2-225(2) (2009). We have recognized that Tennessee's long-arm statutes expand the jurisdictional reach of Tennessee courts "as far as constitutionally permissible." *First Cmty. Bank*, 489 S.W.3d at 384 (quoting *Sumatra*, 403 S.W.3d at 740). The constitutional limits of that jurisdiction are "set by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Sumatra*, 403 S.W.3d at 741. . . .

*Crouch Railway Consulting*, 610 S.W.3d at 471 (footnote omitted).

"Specific [personal] jurisdiction exists when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts."[7] *Sumatra*, 403 S.W.3d at 744 (Tenn. 2013). In deciding matters of specific jurisdiction, an analysis of minimum contacts is "the touchstone," ensuring "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 565 (Tenn. 2023) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Our courts have recognized that "a nonresident defendant's contacts 'must arise out of the defendant's own purposeful, deliberate actions directed toward the forum state,' and be substantial enough to give rise to jurisdiction." *Crouch Railway Consulting*, 610 S.W.3d at 473 (citing *First Cmty. Bank*, 489 S.W.3d at 389 (Tenn. 2015) (see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). A defendant must not be haled into court in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Westport Ins. Corp. v. Howard Tate Sowell Wilson Leathers & Johnson, PLLC*, 714 S.W.3d 463, 487 (Tenn. Ct. App. 2024), *appeal denied* (Mar. 13, 2025) (quoting *Burger King*, 471 U.S. at 475). Importantly, "we must look 'to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *First Cmty. Bank*, 489 S.W.3d at 390 (citing *Walden*, 571 U.S. at 284).

In its complaint,[8] Plaintiff states that Premier Tech sent an email to Plaintiff providing the contact information for S.T.A., with Scott Anderson, its president, copied on the message. The complaint further states that on the same day, "Plaintiff contacted Defendant Anderson,"[9] which is consistent with Mr. Anderson's affidavit.

---

[7] One important development in the doctrine of personal jurisdiction has been the distinction between general and specific personal jurisdiction. The United States Supreme Court recognized this distinction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8, 9 (1984), and this Court did the same in *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 532 (Tenn. 1992), overruled in part by *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d at 649 n. 11. Specific jurisdiction exists when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts. General jurisdiction, on the other hand, may be proper even when the cause of action does not arise out of the defendant's activities in the forum state. A state's courts may assert general jurisdiction when the defendant is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[8] Plaintiff amended its complaint once. The statements herein are taken from the amended complaint.

[9] We note that the affidavits of David and Matt Scott suggest that Defendants contacted Plaintiff by email immediately following the referral email from Premier Tech, while the complaint states that Plaintiff was the first to contact Defendants. We find the inconsistency in Plaintiff's assertions

Thereafter, Plaintiff and Defendants exchanged numerous emails and phone calls during which Plaintiff provided, inter alia, financial information needed to process the loan commitments, resulting in Plaintiff signing the loan commitments and wiring the deposit to Defendants. While the text of the emails is not in the record, the affidavits submitted by Plaintiff describe the communications as mostly consisting of requests for financial information, descriptions of conditions in the equipment financing market, and attempts to complete the paperwork necessary to facilitate the transaction. There is no allegation that either defendant made an appearance in Tennessee. Neither are there any allegations that Defendants targeted the state of Tennessee to conduct business. This is significant because "'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *First Cmty. Bank*, 489 S.W.3d at 390 (quoting *Walden*, 571 U.S. at 285).

We also note that the facts stated in the complaint fail to show Defendants' "purposeful availment" to Tennessee. *Crouch Railway Consulting*, 610 S.W.3d at 473 ("[T]his Court long ago recognized the 'purposeful availment' requirement as part of the minimum contacts paradigm.") (citing *Darby v. Superior Supply Co.*, 224 Tenn. 540, 458 S.W.2d 423, 425 (1970); *see also Hanson v. Denckla*, 357 U.S. 235, 253)). Here, Plaintiff's allegations fail to show that Defendants' contacts with Tennessee arise out of Defendants' own purposeful, deliberate actions directed toward Tennessee, or that their contacts are substantial enough to give rise to jurisdiction. *See Crouch Railway Consulting*, 610 S.W.3d at 473. As the chancellor correctly reasoned and ruled:

It is the defendants' contacts with the forum state itself and not the defendants' contacts with the person who resides there. The Court finds that that is an important distinction in this case, that the defendant equipment financing company had contacts with the plaintiff but did not have sufficient enough contacts with the forum state itself. Based on the affidavits that were submitted, it appears that there was email communication; however, the services that were provided by defendant, the equipment financing services, were all performed in the state of Minnesota, not in Tennessee, that information was transmitted from the plaintiff in Tennessee to the defendant in Minnesota for its use in Minnesota to secure financing. So, the Court finds that those contacts standing alone are insufficient to support Tennessee's exercise of personal jurisdiction over the defendants in this case based on those very limited contacts.

---

inconsequential because the communication was directed toward Plaintiff, not the state of Tennessee. Without more, such contact is inadequate to establish personal jurisdiction. *First Cmty. Bank*, 489 S.W.3d at 390.

We agree. As noted above, Plaintiff had the burden of proving a prima facie case showing personal jurisdiction over Defendants. *See id.* at 470. As our Supreme Court has stated, contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully directed activities at or availed itself of the forum state in such a way that the defendant should reasonably anticipate being haled into court there. *Id.* at 472 (citing *Burger King*, 471 U.S. at 472-74). Significantly, this "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (citations omitted). Here, however, the factual allegations in the complaint, affidavits, and other evidentiary materials Plaintiff relies upon fail to establish sufficient contacts between Defendants and Tennessee with reasonable particularity. *Id.* at 470 (citing *First Cmty. Bank*, 489 S.W.3d at 383). Further, they fail to establish that Defendants purposefully directed activities at Tennessee or availed themselves of doing business in this state in such a way that they should reasonably anticipate being haled into court in Tennessee. *See id.* at 472.

Accordingly, we affirm the chancellor's decision to dismiss the complaint against Defendants for lack of personal jurisdiction.

## IN CONCLUSION

We affirm the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Scott Materials, Inc.

_____
FRANK G. CLEMENT JR., P.J., M.S.