IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 18, 2004 Session

## SAMUEL HUMPHREYS v. RICHARD SELVEY

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT000891     The Honorable George H. Brown, Jr., Judge**

_____

### No. W2002-02788-COA-R3-CV - Filed April 28, 2004

_____

Plaintiff, Tennessee buyer, filed complaint in Shelby County, Tennessee circuit court against South Carolina seller for fraudulent, unlawful, and tortious conduct in connection with contract for purchase of antique soda dispensers. Seller filed motion to dismiss, alleging as grounds lack of personal jurisdiction and improper venue, and trial court granted motion on both grounds. Buyer appeals trial court's finding that there were insufficient contacts to establish personal jurisdiction of seller. We reverse and remand.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

S. Russell Headrick and Jennifer Marie Eberle, Memphis, For Appellant, Samuel Humphreys

Bill M. Wade, Memphis, For Appellee, Richard Selvey

### OPINION

The controversy in this case centers around a contract for sale of antique soda dispensers between a Tennessee resident (buyer) and South Carolina resident (seller).

In August 2001, defendant Richard Selvey ("Selvey" or "Defendant"), a South Carolina resident, contacted Fred Hawkins[1] ("Hawkins") by letter to inform Hawkins of his intent to sell a collection of antique soda dispensers. Selvey's letter contained photos of several of the dispensers. Shortly thereafter, Hawkins contacted the plaintiff, Samuel Humphreys ("Humphreys" or "Plaintiff"), a resident of Memphis, Shelby County, Tennessee, regarding Selvey's desire to sell the

---

[1] Hawkins is a resident of Valdese, Burke County, North Carolina.

dispensers for $300,000.00. Hawkins forwarded copies of Selvey's letter and the attached pictures to Humphreys.

Upon receipt of the letter and pictures, Humphreys authorized Hawkins to contact Selvey to arrange for a sale of the dispensers to plaintiff. In his discussion(s) with Selvey, Hawkins notified Selvey that he was arranging the sale on behalf of a third party.

During the week of August 29, 2001, Humphreys authorized Mark Kennedy ("Kennedy"), a close friend and experienced antiques dealer, to notify Selvey of plaintiff's interest in purchasing 115 dispensers. In his affidavit filed in support of Humphreys's complaint, Kennedy testified that he contacted Selvey to discuss "the terms of the sale, and the quality and authenticity of the dispensers." The parties ultimately agreed that Kennedy would travel to South Carolina to pick up a "sample lot of the dispensers in exchange for a down payment of one hundred thousand dollars."

In September 2001, the parties entered into a formal contract whereby Humphreys agreed to purchase 115 dispensers from Selvey for a total price of $300,000.00.[2] At Humphreys's request, Kennedy traveled to Myrtle Beach, South Carolina on the week of September 6, 2001, to pick up 10 to 20 dispensers from Selvey and deliver the initial down payment of $100,000.00.[3] Upon his arrival in South Carolina, Kennedy met with Selvey and followed him to his home to pick up the sample lot of dispensers. Kennedy accepted the dispensers, which had been boxed and sealed prior to his arrival, and paid the down payment.

Approximately one week later, Humphreys authorized Kennedy to accept delivery of the remaining dispensers and store them temporarily in an antiques mall in Jackson, Madison County, Tennessee, where Kennedy was leasing space. Humphreys further authorized Kennedy to pay to Selvey the final $200,000.00 required under the contract.[4] Soon thereafter, Selvey personally

---

[2] In his complaint, Humphreys noted:

> Defendant is experienced in the antiques trade, specifically in the collection and sale of dispensers. Prior to the transaction, defendant represented that the dispensers were in "very good to excellent condition," with the exception of two dispensers that were reproductions, and further that the dispensers were "one-hundred percent (100%) original." Plaintiff reasonably relied upon defendant's representations about the quality and value of the dispensers.

[3] Humphreys's $100,000.00 down payment was financed in part by a $50,000.00 cashier's check obtained by plaintiff from Enterprise National Bank in Memphis, Tennessee. Humphreys withdrew the remaining $50,000.00 from his personal account with Enterprise National Bank.

[4] On September 6, 2001, Humphreys withdrew funds for the final $200,000.00 payment from his account with Enterprise National Bank.

delivered and unloaded the remaining dispensers in Jackson, Madison County, Tennessee. Upon acceptance of the dispensers, Kennedy paid the balance owed under the contract.

Humphreys's complaint describes the events following Selvey's delivery of the remaining items and payment of the contract balance:

> At the time of delivery, plaintiff accepted the dispensers without discovery of any nonconformities. Plaintiff's acceptance was reasonably induced by the difficulty of discovery before acceptance and/or by assurances of the defendant. Plaintiff later discovered nonconformities of the dispensers that substantially impairs their value to plaintiff. Further, the dispensers did not conform to the express representations and implied warranties made to plaintiff by defendant as to the quality and value of the dispensers.
>
> Within a reasonable time of discovery of nonconformity, plaintiff, by letter delivered via certified mail, dated October 31, 2001, attempted to communicate revocation of his acceptance of the dispensers pursuant to T.C.A. § 47-2-608. By facsimile on November 16, 2001, plaintiff again attempted to communicate revocation of his acceptance of the dispensers pursuant to T.C.A. § 47-2-608.
>
> Thereafter, plaintiff's letters dated October 31, 2001 were returned as either "unclaimed" or "no such number."
>
> On December 14, 2001, plaintiff again attempted to communicate revocation of acceptance of the dispensers pursuant to T.C.A. § 47-2-608, by letter delivered via certified mail. Again, plaintiff's letters were returned "unclaimed."
>
> In a final effort to communicate revocation of acceptance of the dispensers pursuant to T.C.A. § 47-2-608, plaintiff enlisted the assistance of a private process server in Myrtle Beach, South Carolina, Charles Deal ("Deal"). On Monday, January 14, 2002, at 3:43 p.m., Deal personally served upon Richard Selvey, at his home address, plaintiff's revocation of acceptance.
>
> In each communication of revocation of acceptance, plaintiff made demand for refund, within ten (10) days of the receipt of the letter, of the entire purchase price of $300,000.00 paid for the dispensers. Plaintiff requested that his refund should be delivered to the original point of delivery of the dispensers in Jackson, Tennessee, and, if by cashier's check, should be made payable to Rick

Humphreys. Plaintiff further agreed to tender, upon receipt of the full amount, the dispensers to defendant, F.O.B. the dock of the original point of delivery in Jackson, Tennessee.

At the time of filing of this Complaint, defendant has not acknowledged plaintiff's revocation of his acceptance of the dispensers nor has defendant complied with plaintiff's request for a full refund.

On February 18, 2002, Humphreys filed a six count complaint against Selvey in the Circuit Court of Memphis, Shelby County, Tennessee, for damages arising from defendant's alleged improper conduct in connection with the parties' September 2001 agreement. Humphreys asserts that the trial court had both subject matter and personal jurisdiction over the action, stating:

This Court is vested with jurisdiction over the subject matter of this action pursuant to T.C.A. § 16-10-101 (2002). This Court has jurisdiction over the defendant by virtue of T.C.A. § 20-2-223 (2002) because the defendant transacted business in the State of Tennessee, contracted to supply services or things in the State of Tennessee, and tortiously injured plaintiff by acts which occurred in the State of Tennessee. Venue is proper by virtue of T.C.A. § 20-4-101 (2002) because Shelby County is the county where the cause of action arose.

On April 4, 2002, Selvey filed a motion to dismiss the complaint pursuant to Tennessee Rule of Civil Procedure 12.02 for lack of personal jurisdiction and improper venue. Selvey's motion states:

All pertinent acts and agreements alleged in Plaintiff's Complaint were conducted or commenced in the State of South Carolina, and at no time did Defendant purposefully direct his business activities or efforts toward the State of Tennessee or any of its residents. The honorable courts of the State of Tennessee therefore lack jurisdiction to adjudicate Plaintiff's Complaint, and Plaintiff's Complaint warrants dismissal pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure.

To the extent that Defendant made any contact with the State of Tennessee or its residents, all such contact was directed solely toward Madison County, Tennessee. During all times relevant to this action, Defendant never traveled to Shelby County nor communicated nor dealt with any residents of Shelby County. Therefore, even if the State of Tennessee has personal jurisdiction over Defendant, proper venue lies in Madison County, and Plaintiff's Complaint warrants

dismissal pursuant to Rule 12.02(3) of the Tennessee Rules of Civil Procedure.

Selvey filed only a memorandum of law in support of his motion, which, of course, is not part of the record on appeal. A hearing on Selvey's motion was held on June 7, 2002, and, in an order dated June 28, 2002, the trial court granted defendant's motion to dismiss on grounds of lack of personal jurisdiction pursuant to 12.02(2) and improper venue under 12.02(3), stating:

> This matter came before the Court upon Defendant's Motion to Dismiss on June 7, 2002. Based upon Defendant's Motion, Defendant's Memorandum of Law in Support of Motion, Plaintiff's Response to Defendant's Motion, statements of counsel, and the entire record in this matter, it appears to the Court as follows: That the basis of this cause of action is a contract formed between the parties and consummated in South Carolina; that the Defendant's delivery of certain goods to Jackson, Tennessee does not create sufficient contacts for the State of Tennessee to exercise *in personam* jurisdiction over Defendant to adjudicate this cause of action; that, assuming *arguendo* that the State of Tennessee held sufficient contacts to exercise *in personam* jurisdiction over Defendant, proper venue lies in Madison County, not Shelby County, because of Defendant's delivery of goods to Jackson, Tennessee.

> THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

> 1. Defendant's Motion to Dismiss is hereby granted on the grounds of lack of personal jurisdiction pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure.

> 2. Defendant's Motion to Dismiss is hereby granted on the additional grounds of improper venue pursuant to Rule 12. 02(3) of the Tennessee Rules of Civil Procedure.

> 3. All costs of this matter shall be assessed directly against Plaintiff.

On July 26, 2002, Humphreys filed a motion to alter or amend the trial court's judgment pursuant to Tennessee Rule of Civil Procedure 59.04. The trial court denied Humphreys's motion by order dated November 12, 2002, and plaintiff filed a timely notice appeal. On appeal, Humphreys presents for review the sole issue of whether the trial court erred in granting Selvey's Rule 12.02 motion to dismiss for lack of personal jurisdiction.

The plaintiff has the burden of establishing a ***prima facie*** case that personal jurisdiction over a defendant is proper. ***See Manufacturers Consolidation Serv., Inc. v. Rodell***, 42 S.W.3d 846, 854 (Tenn. Ct. App. 2000). When a defendant files a motion to dismiss challenging the trial court's personal jurisdiction over him, the plaintiff must set out specific facts which demonstrate that the court has jurisdiction. ***See id***. at 854-55. In ***Rodell***, this Court noted:

> In ruling on the defendant's motion to dismiss for lack of personal jurisdiction, however, the trial court is required to construe the pleadings and affidavits in the light most favorable to the plaintiff. ***Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.***, No. 02A01-9803-CH- 00055, 1998 WL 846708, at *1 (Tenn. Ct. App. Dec.7, 1998) (no perm. app. filed); ***accord CompuServe, Inc. v. Patterson***, 89 F.3d 1257, 1262 (6th Cir. 1996); ***Market/Media Research, Inc. v. Union-Tribune Publ'g Co.***, 951 F.2d 102, 104 (6th Cir. 1991), cert. denied, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); ***Theunissen v. Matthews***, 935 F.2d 1454, 1458, 1459 (6th Cir. 1991); ***Serras v. First Tennessee Bank Nat'l Ass'n***, 875 F.2d 1212, 1214 (6th Cir. 1989). Under this standard, dismissal is proper only if all of the specific facts alleged by the plaintiff collectively fail to state a ***prima facie*** case for jurisdiction. ***CompuServe***, 89 F.3d at 1262; ***Market/Media Research***, 951 F.2d at 105; ***Theunissen***, 935 F.2d at 1459.

***Id***. at 855.

In ***Chenault v. Walker***, 36 S.W.3d 45 (Tenn. 2001), our Supreme Court provides guidelines for consideration of a motion to dismiss for lack of personal jurisdiction:

> Under the Tennessee Rules of Civil Procedure a motion to dismiss may be based on one or more of eight grounds, including lack of personal jurisdiction and failure to state a claim on which relief can be granted. ***See*** Tenn. R. Civ. P. 12.02. A court either decides this motion based on the allegations contained in the pleadings or, if matters outside the pleadings – such as affidavits – are presented, the court will treat the motion as one for summary judgment as provided in Tenn. R. Civ. P. 56. ***See*** Tenn. R. Civ. P. 12.03.
>
> As we have stated in the past, however, Rule 12.03 does not apply to a motion to dismiss for lack of personal jurisdiction, unless the evidence brought to the court is so conclusive that the motion may be fully and finally resolved on the merits. ***See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers***, 621 S.W.2d 560, 561 n. 1 (Tenn. 1981) ("[S]ummary judgment procedure does not properly

apply to jurisdictional issues.") (quoting 6 Moore, Federal Practice (Part 2) § 56.17(36) at 913 (1980)). Often a complete resolution of the jurisdictional issue is not possible at the beginning of litigation because not enough evidence has been developed; indeed, discovery will not have yet begun. This gives rise to a dilemma. If a court seeks to develop more evidence, by ordering discovery or an evidentiary hearing, the burden on an out-of-state defendant may in some cases be nearly as great as if the court simply ruled from the start that jurisdiction was present and allowed the litigation to proceed. But allowing a court to decide whether jurisdiction exists based entirely on the pleadings, as a court may do when confronted with one of the other grounds to dismiss listed in Rule 12.02, is hardly a better solution.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Regardless of the theory on which personal jurisdiction is based, though, the necessity of adopting a middle-ground solution – between relying merely on the pleadings and postponing a decision on jurisdiction until discovery has been completed – is apparent.... It is clear that the plaintiff bears the ultimate burden of demonstrating that jurisdiction exists. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). If the defendant challenges jurisdiction by filing affidavits, the plaintiff must establish a prima facie showing of jurisdiction by responding with its own affidavits and, if useful, other written evidence. *See Posner v. Essex Ins. Co. Ltd.*, 178 F .3d 1209, 1214 (11th Cir. 1999); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2nd Cir. 1999); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). A court will take as true the allegations of the nonmoving party and resolve all factual disputes in its favor, *see Posner*, 178 F.3d at 1215; *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3rd Cir. 1998), but it should not credit conclusory allegations or draw farfetched inferences, *see Massachusetts School of Law*, 142 F.3d at 34.

We find that this procedure for evaluating a defendant's motion to dismiss under Tenn. R. Civ. P. 12.02(2) is sensible and not inconsistent with any rule or case in Tennessee of which we are aware, and we therefore adopt it.

***Id***. at 55-56.

In this case, the trial court's order granting Selvey's motion to dismiss[5] stated that the court relied upon "Defendant's Motion, Defendant's Memorandum of Law in Support of Motion, Plaintiff's Response to Defendant's Motion, statements of counsel, and the entire record in this matter," in forming its decision. We, therefore, consider the entire record on appeal, including the affidavits filed in support of Humphreys's complaint, in determining whether the trial court properly found that personal jurisdiction over Selvey was lacking.

Tennessee's long-arm statute, T.C.A. § 20-2-214 (1994), allows Tennessee courts to exercise jurisdiction to the extent the Fourteenth Amendment of the United States Constitution permits. ***See, e.g.***, ***Cummins v. Contract- Mart, Inc.***, 635 F.Supp. 122, 124 (E.D. Tenn. 1986); ***Rodell***, 42 S.W.3d at 855. T.C.A. § 20-2-214 (1994) provides:

> **20-2-214. Jurisdiction of persons unavailable to personal service in state – Classes of actions to which applicable.** –
>
> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
>
> (2) Any tortious act or omission within this state;
>
> (3) The ownership or possession of any interest in property located within this state;
>
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

---

[5] Humphreys contends that Selvey's motion to dismiss "was not 'properly supported' because [defendant] failed to submit ***any*** evidence in the form of affidavits, sworn statements, declarations, testimony, or otherwise in support of his motion." (emphasis in original). In ***Manufacturers Consolidation Serv., Inc. v. Rodell***, 42 S.W.3d 846, 854 (Tenn. Ct. App. 2000), the court noted that where "the defendant challenges the trial court's personal jurisdiction over him by filing a properly supported motion to dismiss, 'the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" (quoting ***Theunissen v. Matthews***, 935 F.2d 1454, 1458 (6th Cir. 1991); ***accord Serras v. First Tennessee Bank Nat'l Ass'n,*** 875 F.2d 1212, 1214 (6th Cir. 1989). The above-cited authority does not stand for the position that a movant is required to file affidavits or evidentiary documents in support of their motion, but rather provides that where a movant files affidavits or similar evidentiary documents in support of a motion to dismiss, a plaintiff "must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." ***See id***.

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

(b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Our task, therefore, is to determine if the exercise of personal jurisdiction over Selvey violates the Due Process Clause.


Since the United States Supreme Court adopted the "minimum contacts" analysis in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and in keeping with this state's long-arm statute, Tennessee courts have developed a five-part test which serves to evaluate the contacts between a defendant and the forum state. *See Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). That test evaluates: (1) the quantity of the contacts between the defendant and the forum state; (2) the nature and quality of those contacts; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in adjudicating the dispute; and (5) the convenience of the forum state to the parties. *See id*. The end result of the *Masada* analysis is a determination of whether, through its conduct and connection to the forum state, a defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The pertinent facts can be summarized chronologically as follows. In August 2001, Selvey sent a letter to Hawkins in North Carolina, informing Hawkins of his desire to sell a collection of antique soda dispensers. Hawkins, in turn, contacted Humphreys by telephone regarding Selvey's stated intent to sell the dispensers, and further forwarded a copy of Selvey's letter to Humphreys in Tennessee. There is no evidence in the record to indicate that Selvey was aware that Hawkins had a potential buyer in Tennessee at this time.

After receiving a copy of Selvey's letter, Humphreys instructed Hawkins to contact defendant. As instructed, Hawkins contacted Selvey and began arrangements for a sale of the dispensers to a third party. Again, there is no indication in the record as to whether Selvey was aware at this time that Hawkins was acting on behalf of a Tennessee resident.

During the last week of August 2001, Humphreys authorized Kennedy to contact Selvey to discuss the terms of sale. The parties entered into a contract for sale in September 2001. Soon thereafter, Kennedy, at Humphreys's request and direction, drove to South Carolina to pick up a sample lot of dispensers. Upon receipt of the dispensers, Kennedy paid to Selvey the $100,000.00 down payment required by the parties' contract. The down payment was financed with funds from a bank in Memphis, Shelby County, Tennessee.

Approximately one week later, Selvey personally delivered the remaining dispensers to Kennedy in Jackson, Tennessee. Selvey unloaded the dispensers and was paid the remaining balance due under the contract. The $200,000.00 balance was financed with funds from the same bank in Tennessee.

The parties do not dispute the basic facts of this case. Rather, the sole dispute in this matter centers around whether the facts, as established by the affidavits filed in support of Humphreys's complaint, establish a *prima facie* case that Selvey had sufficient minimum contacts with the State of Tennessee as a result of his dealings with plaintiff, to warrant the exercise of jurisdiction over his person.

We note, initially, that T.C.A. § 20-2-214(a)(5) permits Tennessee courts to exercise personal jurisdiction over a non-resident for any action or claim for relief arising from "a contract for services to be rendered or for materials to be furnished in this state." In the instant case, Humphreys and Selvey entered into a single contract for the purchase of a collection of antique soda dispensers (materials), with final delivery of the primary balance of the dispensers to take place in Jackson, Tennessee. Moreover, T.C.A. § 20-2-214(a)(2) permits Tennessee courts to exercise personal jurisdiction over a non-resident for "[a]ny tortious act or omission within the state." Humphreys's complaint specifically alleges fraud and misrepresentation by Selvey resulting in injury to the plaintiff. The plain language of this statute and the relevant subsections appears to grant Tennessee courts personal jurisdiction over a non-resident defendant in actions such as the case before this Court.

In *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001), the Sixth Circuit determined that T.C.A. § 20-2-214(a)(2) "allows a court to exercise jurisdiction 'if a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee.'" Accordingly, the court noted that "even a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Id*. (citation omitted). We find the reasoning and interpretation applied by the Sixth Circuit to be sound, and thus conclude that the single contract formed between Humphreys and Selvey for the

purchase of a collection of antique soda dispensers could support a finding of minimum contacts sufficient to exercise personal jurisdiction over the defendant pursuant to T.C.A. § 20-2-214(a)(2) and (5), provided that the evidence set forth by plaintiff creates a ***prima facie*** case that personal jurisdiction over the defendant is proper in light of the ***Masada*** factors.

Addressing each of the ***Masada*** factors in turn, we first note that the contract around which this dispute centers was formed as a result of several telephone conversations and written communications between Humphreys and/or his agents (Kennedy and Hawkins) and defendant. In ***Neal***, the Sixth Circuit noted that "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." 270 F.3d at 331 (citations omitted). ***Cf. Garrett v. R. H. Macy & Co., Inc.***, 360 F. Supp. 872, 877 (E.D. Tenn. 1972) (finding that "[t]elephone calls by the non-resident to the forum state alone are not sufficient to give the forum court jurisdiction"). Humphreys's complaint sets forth counts of breach of express warranty, breach of implied warranty of merchantability, fraud and misrepresentation, negligent misrepresentation, and violations of the Tennessee Consumer Protection Act, based upon allegations that Selvey misrepresented the quality, value, and condition of the dispensers in his communications with plaintiff or his agents. The record indicates that Selvey directed the alleged misrepresentations to Humphreys and/or his agents. Although Selvey's initial communications were directed toward Hawkins, it is evident that Selvey became aware of the fact that he was dealing with a Tennessee buyer prior to the formation of the contract. Moreover, Kennedy testified that he spoke with Selvey regarding the terms of the sale contract, such terms apparently including the parties' agreement to have the balance of the dispensers delivered to a destination specified by plaintiff in Jackson, Tennessee. We thus find that Selvey's communications regarding the quality, value, authenticity, and condition of the dispensers had foreseeable consequences in Tennessee and were ultimately directed at a Tennessee resident.

Although it is unlikely that the telephone calls and communications exchanged between the parties would, alone, be sufficient to support a finding of minimum contacts, we conclude that these communications, coupled with Selvey's act of personally delivering the balance of the dispensers to Jackson, Tennessee, constitute sufficient minimum contacts with the State of Tennessee such as to justify the exercise of personal jurisdiction over the defendant. Considering the record as a whole, we find that Selvey purposefully availed himself of the privilege of conducting business within the State of Tennessee by knowingly entering into a contract for sale with a Tennessee resident after numerous telephone conversations and written communications, collecting a significant purchase price on the contract ($300,000.00), and personally delivering the balance of the dispensers to the plaintiff's agent in Jackson, Tennessee. We thus conclude that Selvey's actions are of sufficient quantity and quality to constitute minimum contacts with the State of Tennessee.

As to the third ***Masada*** factor, we find that Selvey's contacts with the State of Tennessee are directly related to Humphreys's causes of action. As has been discussed, the contacts and causes of action all stem from or relate to the parties' contract for sale and purchase of the dispensers.

*Masada's* fourth factor directs the court to evaluate the interest of the forum state in adjudicating the dispute. In *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit stated that "when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." *Id*. at 385 (citations omitted); *see also Flakt, Inc., Drying Sys. Div. v. Windsor Gypsum, Inc.*, 1987 WL 15197, at *10 (Tenn. Ct. App. Aug. 5, 1987).

With regard to the fifth factor, we note that there is no evidence in the record regarding the level or degree of inconvenience that would befall Selvey should he be forced to litigate this matter in Tennessee. Although one can assume that litigation of this matter in Tennessee might be burdensome to a non-resident such as Selvey, we are simply unwilling to deny jurisdiction on this basis in light of our foregoing discussion. Moreover, we find that the nature and consequences of Selvey's contractual agreement with Humphreys dictate that the defendant could have reasonably anticipated being haled into court in this State for complications or disputes arising from his contract with plaintiff. Considering the record as a whole, we find that it would not violate "traditional notions of fair play and substantial justice" to permit Tennessee to exercise personal jurisdiction over the defendant.

In the interest of providing a complete and accurate analysis, we briefly distinguish the case of *Darby v. Superior Supply Co.*, 458 S.W.2d 423 (Tenn. 1970), a Tennessee Supreme Court decision relied upon by Selvey in his argument to this Court. In *Darby*, the defendant, an Alabama resident, purchased an order of mahogany lumber from a Tennessee corporation (plaintiff). *Id*. The Court noted:

> Darby bought the lumber for his personal use at his home in Florence, Alabama, the order therefor resulting from correspondence and telephone calls between the parties, without Darby ever entering the State of Tennessee. The lumber was delivered to Darby's agent at Superior's plant in Chattanooga and carried to Florence, Alabama. After delivery Darby found he could use only a part of the lumber because of its dimensions. He used this, paid for it, and notified Superior he could not use the balance and would hold it for Superior. Subsequently, Superior sued Darby for the balance claimed, $3,639.48 and interest, serving process on him in Alabama by means of Tennessee's long arm statute....

*Id*. at 423-24.

On appeal, the Court considered the issue of whether Tennessee courts had personal jurisdiction over the defendant, stating:

> Adverting to the factual situation, we have a case where a nonresident individual, without ever entering the State of Tennessee,

consummated by interstate mail and telephone calls, a retail purchase of a modest amount of mahogany lumber to be used for his own personal benefit. While Superior had some trouble filling the order, this did not arise from its unusual nature, since it was simply for mahogany boards of normal dimensions.... The only act of defendant in Tennessee was the acceptance of the lumber onboard a truck he sent to Superior's mill for that purpose.

So, the question boils down simply to this: In an ordinary, single, retail sale transaction, where the purchaser never enters the State of Tennessee until the purchase contract has been consummated, and thereafter his only connection with the State of Tennessee is the acceptance of the delivery by an agent in Tennessee, is this a purposeful availing of the privilege of conducting activities in Tennessee and is it an invocation of the benefits and protection of its laws?

The question answers itself in the negative. What are the activities, that are not interstate? Where are the benefits? What protection of the law was required that is not extended to every interstate transaction? To each question the honest answer must be "none."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In conclusion we should mention that reference in this opinion to the interstate character of the transaction involved was only for the purpose of emphasizing the absence of either qualitative or quantitative instate activity. We also emphasize that this case has not been decided solely on the ground the defendant never entered Tennessee in the course of the transaction involved. We have decided the case as we have because, viewed in its entirety, we are of the opinion it fails to meet the test laid down in *International Shoe*, *McGee*, and *Hanson*.

*Id*. at 426-27.

Selvey asserts that facts of *Darby* are controlling in the instant matter. We disagree, noting, initially, that the Tennessee Supreme Court has limited *Darby's* authority to the particular facts of that case. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 562

(Tenn. 1981).[6] Although the facts of the case at bar are similar to those in *Darby*, we note two specific differences. Unlike the defendant in *Darby*, Selvey personally delivered the dispensers to Humphreys in Jackson, Tennessee, knowingly and purposefully availing himself of the privilege of conducting business in Tennessee. Selvey further accepted final payment of the contract balance in Tennessee. From the record as it stands, it appears as though Selvey's delivery of the dispensers to Humphreys in Tennessee was a material condition of the parties' contract. Moreover, we note that the parties' contract, unlike the agreement in *Darby*, provided for a substantial purchase price of $300,000.00. A contract providing for such a substantial purchase price has foreseeable economic consequences in Tennessee.

Accordingly, we conclude that the trial court erred in finding that it did not have personal jurisdiction over Selvey, and thereby reverse its June 28, 2002 order to the extent that it grants defendant's motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(2).

The trial court further granted Selvey's motion to dismiss on grounds of improper venue pursuant to Rule 12.02(3). The court specifically found that, "assuming *arguendo* that the State of Tennessee held sufficient contracts to exercise *in personam* jurisdiction over Defendant, proper venue lies in Madison County, not Shelby County, because of Defendant's delivery of goods to Jackson, Tennessee." Humphreys acknowledges that he "did not appeal the decision of the trial court on venue." Therefore, the issue of whether the trial court correctly dismissed plaintiff's complaint on grounds of improper venue is not properly before this court.

Although we are not concerned with the correctness of the trial court's decision to grant dismissal of plaintiff's complaint on grounds of improper venue, this Court is faced with the question of whether it is permitted to transfer the case to Jackson, Madison County, Tennessee, rather than affirm the trial court's outright dismissal of the action.

Madison County, Tennessee would be the appropriate venue for this matter. T.C.A. § 20-4-101(a) (1994) states:

> In all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found.

In *Five Star Express, Inc. v. Davis*, 866 S.W.2d 944 (Tenn. 1993), the Tennessee Supreme Court defined a transitory action as "one in which the injury occurred to a subject not having an immovable location; therefore a transitory action could have occurred anywhere." *Id*. at 945 n. 1. The Court

---

[6] In *Nicholstone*, the Court determined that *Darby* "did not sanction the assertion of jurisdiction under our "long arm" statute to the maximum extent permitted by the Fourteenth Amendment, which is the declared intent of our General Assembly." *Id*. at 563.

noted that "typical examples of transitory actions are actions sounding in tort and contract." *Id*. The cause of action in the instant matter is transitory in nature.

We further find that plaintiff's cause of action arose in Madison County, Tennessee, and not Shelby County, on the basis that the most significant events surrounding the parties' contract occurred in Madison County. Although all communications between the parties were received and/or initiated in Shelby County, final delivery of the dispensers and payment of the contract balance was made in Madison County. As such, the consequences of Selvey's alleged misconduct had their primary effect in Madison County. We thus find that Humphreys's cause of action arose in Madison County, Tennessee.

Having determined that Madison County is the appropriate venue for this matter, we must now consider whether this Court is permitted to transfer the case. T.C.A. § 16-1-116 (Supp. 2003) states:

> Notwithstanding any other provision of law or rule of court to the contrary, when an original civil action, an appeal from the judgment of a court of general sessions, or a petition for review of a final decision in a contested case under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed. Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

In *Wylie v. Farmers Fertilizer & Seed Co.*, No. W2002-01227-COA-R9-CV, 2003 WL 21998408, *1 (Tenn. Ct. App. Aug. 21, 2003), this Court reversed the trial court's finding that plaintiff's cause of action was transitory in nature, and determined that the action was required to have been brought in Gibson County, rather than Dyer County. Acting pursuant to T.C.A. § 16-1-116, we concluded, however, that "the interest of justice would best be served by transferring the lawsuit to Gibson County rather than dismissing it." *Id*. at *6. On remand, we directed the trial court to transfer the case to the appropriate court in Gibson County. *Id*.

In the instant matter, we find that the interest of justice would best be served by transferring the lawsuit to Madison County. We note, initially, that delivery of a substantial number of the dispensers was completed in Madison County at the direction of the plaintiff, a Shelby County resident. Moreover, payment of the final $200,000.00 balance due under the contract was rendered and accepted in Madison County. Finally, as noted, the economic consequences of Selvey's alleged wrongful conduct had their most substantial and foreseeable impact in Madison County. We thus

reverse the trial court's dismissal of plaintiff's complaint on grounds of improper venue and remand the action for transfer to the appropriate trial court.

The decision of the trial court is reversed and remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed against the appellee, Richard Selvey.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.