# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### ASSIGNED ON BRIEFS JULY 28, 2011

## YOUNG BOK SONG v. KATHRYN LEHMAN and JAMES C. THORNTON

**Direct Appeal from the Chancery Court for Johnson County**
**No. 6456      G. Richard Johnson, Chancellor**

---

**No. E2010-01650-COA-R3-CV-FILED-SEPTEMBER 16, 2011**

---

Plaintiff was involved in a previous lawsuit in North Carolina in which he sued several police officers. Plaintiff then instituted the present case against two North Carolina attorneys who represented the police officers in the North Carolina litigation. The trial court granted the attorneys' motion to dismiss for lack of personal jurisdiction. It also denied Plaintiff's request for the appointment of an attorney and an interpreter. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Young Bok Song, Mountain City, Tennessee, *pro se*

Christopher D. Owens, Johnson City, Tennessee, for the appellees, Kathryn Lehman and James C. Thornton

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Young Bok Song ("Plaintiff") is an inmate at the Northeast Correctional Complex in Mountain City, Tennessee. In 2009, he filed a lawsuit in the United States District Court for the Eastern District of North Carolina against several police officers with the City of Fayetteville, North Carolina police department. One of the named defendants was Officer Welch. Officer Welch was represented in the lawsuit by North Carolina attorneys Kathryn Lehman and James Thornton.

In 2010, Plaintiff filed this lawsuit against Ms. Lehman and Mr. Thornton ("the Attorneys") in the chancery court of Johnson County, Tennessee. Plaintiff alleged that when the Attorneys mailed a copy of a motion filed in the North Carolina lawsuit, and a related letter, to him at the correctional complex, they failed to include a return address that indicated a "Legal Identity" and failed to use a "Legal-Mail" stamp on the envelope.[1] Plaintiff alleged that, as a result of these omissions, his mail was opened by mail room officers without his presence. Plaintiff further alleged that this resulted in an invasion of his federal privacy rights and that he was suffering damages and retaliation due to the "exposure" of his federal lawsuit. He sought declaratory relief and monetary damages.

Plaintiff attached to his complaint a "Motion for Appointment of Counsel," in which he requested that the chancery court appoint an attorney for him due to the fact that he is a "foreigner [and] Korean National," a non-lawyer, and indigent. The chancery court denied the motion shortly after it was filed.

The Attorneys filed a motion to dismiss for lack of personal jurisdiction. They attached to their motion their own affidavits, stating that they are North Carolina residents who have never resided in Tennessee or owned any property interest in Tennessee. The Attorneys further stated that they are licensed to practice law in North Carolina and that they have never practiced law in Tennessee or appeared before any court in the State of Tennessee. They stated that they represent police officers in the federal lawsuit filed by Plaintiff in North Carolina, and that their only interaction with Plaintiff was serving him by mail with documents that were filed in the North Carolina lawsuit as required by the Federal Rules of Civil Procedure. According to the Attorneys' affidavits, the North Carolina lawsuit arose out of events that took place in North Carolina, and they do not represent any Tennessee residents in the lawsuit. The Attorneys stated that they do not have a contractual

---

[1] These documents were attached to Plaintiff's complaint. They consist of a copy of a motion for an extension of time and a letter in which Ms. Lehman inquired as to Plaintiff's position on the motion.

relationship with any entity that is a resident of Tennessee, nor do they have a contractual relationship to provide any services in Tennessee.

Plaintiff then filed a "Motion to Proceed," in which he responded to the motion to dismiss filed by the Attorneys. He argued that personal jurisdiction existed because the Attorneys had "continuously and systematically" contacted him by serving him by mail with various documents that were filed in the North Carolina lawsuit while he was incarcerated in Tennessee.

Plaintiff subsequently filed a motion requesting that he be transported to chancery court for the hearing, and the court granted Plaintiff's motion. Thereafter, Plaintiff filed another motion requesting that an interpreter be appointed for the hearing. The chancery court denied Plaintiff's request for an interpreter, stating in its order that Plaintiff had demonstrated "perfect" English writing in the numerous documents and eleven written motions that he had filed in the court, and finding "no evidence that the Plaintiff does not understand the English language, either written or spoken."

The chancery court ultimately granted the Attorneys' motion to dismiss upon concluding that it lacked jurisdiction over the Attorneys. Plaintiff timely filed a notice of appeal.

## II. ISSUES PRESENTED

Plaintiff presents the following issues, as we perceive them, for review:

1. Whether the trial court erred in concluding that it did not have personal jurisdiction over the Attorneys;
2. Whether the trial court erred in failing to appoint an attorney and an interpreter for Plaintiff; and
3. Whether the legislature and the United States and Tennessee Constitutions permit the litigation of this case.

For the following reasons, we affirm the decision of the chancery court.

## III. DISCUSSION

### A. Personal Jurisdiction

"The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant." *Gordon v. Greenview Hosp., Inc.*,

300 S.W.3d 635, 643 (Tenn. 2009) (citing *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001); *Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d 572, 577 (Tenn. Ct. App. 1992)).  Personal jurisdiction must be demonstrated by a preponderance of the evidence.  *Id.*  If a defendant files a Rule 12.02(2) motion to dismiss for lack of personal jurisdiction, "the defendant may, but is not required to, support the motion with affidavits or other evidentiary materials."  *Id.* at 644 (citing *Humphreys v. Selvey*, 154 S.W.3d 544, 550 n.5 (Tenn. Ct. App. 2004)).  However, a Rule 12.02(2) motion is not converted to a motion for summary judgment when matters outside the pleadings are submitted either in support of or in opposition to the motion.  *Id.* at 643 (citing *Chenault*, 36 S.W.3d at 55).  "[I]f a defendant supports its motion with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence."  *Id.* at 644 (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854-55 (Tenn. Ct. App. 2000)).  The trial court must take the allegations in the plaintiff's complaint as true and resolve all factual disputes in the plaintiff's favor.  *Id.*  "Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction."  *Id.* (citing *Rodell*, 42 S.W.3d at 855).  A decision regarding the exercise of personal jurisdiction involves a question of law, and we review whether the plaintiff has made out a prima facie basis for the exercise of personal jurisdiction over the defendant de novo with no presumption of correctness.  *Id.* at 645.

Tennessee's long-arm statute permits the courts of this state to exercise personal jurisdiction upon, among other things, "[a]ny basis not inconsistent with the constitution of this state or of the United States."  *Rodell*, 42 S.W.3d at 855 (quoting  Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2)).   Thus, when the issue of personal jurisdiction arises, considerations of due process require us to determine "whether it is 'fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action.'"  *Gordon*, 300 S.W.3d at 646 (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 335 (Tenn. 1985)).  Personal jurisdiction can be exercised over a nonresident defendant "only if the defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  When determining whether the defendant has the requisite minimum contacts with the forum state, "the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action."  *Id.* at 647 (citing *Masada Inv. Corp.*, 697 S.W.2d at 334).  When considering the fairness of exercising jurisdiction, the court must consider the burden on the defendant, the plaintiff's interest in obtaining relief, the interests of the forum state, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.  *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*,

480 U.S. 102, 113 (1987)).

If the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state,[2] specific jurisdiction may be invoked if the plaintiff shows "(1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts." *Gordon*, 300 S.W.3d at 647 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant 'should reasonably anticipate being haled into court [in the forum state].'" *Id.* (quoting *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009)). If the plaintiff makes that showing, then the defendant must demonstrate that exercising specific jurisdiction would be unfair. *Id.*

In the case at bar, Plaintiff contends that it is appropriate to exercise personal jurisdiction over the Attorneys because, in the course of representing Officer Welch in the North Carolina lawsuit, the Attorneys mailed a letter and at least one copy of a motion to him in Tennessee.[3]

In *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 333 (Tenn. 1985), our Supreme Court considered whether it was appropriate to exercise personal jurisdiction over a Texas lawyer based upon the Texas lawyer's preparation of a deed for a real estate transaction involving property located in Tennessee and being sold by a Tennessee entity. Although the Texas lawyer did not physically travel to Tennessee, he conversed with another attorney in Knoxville on several occasions, drafted the documents in accordance with Tennessee law to be recorded in Tennessee, and sent the completed documents to Tennessee for execution. *Id.* at 335. The Court concluded that the Texas lawyer had sufficient minimum contacts with Tennessee to justify personal jurisdiction here. *Id.* "By wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, [the lawyer] purposely availed himself of the privilege of doing business within this state." *Id.* The Court also found that the lawyer "should have reasonably anticipated having

---

[2] Specific jurisdiction applies when a plaintiff's cause of action is based on the defendant's activities in or contacts with the forum state, while general jurisdiction is appropriate when the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum state. *Gordon*, 300 S.W.3d at 648. Because Plaintiff's cause of action in this case is related to the Attorneys' contact with Tennessee, we will only consider the issue of specific jurisdiction.

[3] Although Plaintiff's complaint only mentions the two documents mailed to him in March of 2010, in the motion he filed in response to the Attorneys' motion to dismiss, he claimed that he had received approximately six documents from the Attorneys between March and May of 2010.

to defend his actions in a Tennessee court." ***Id.***

This Court considered the issue of personal jurisdiction over out-of-state attorneys in ***Shelby County Health Care Corp. v. Allstate Ins. Co.***, No. W2002-01439-COA-R9-CV, 2003 WL 22071464 (Tenn. Ct. App. Aug. 28, 2003). The attorneys were from Arkansas and represented an Arkansas plaintiff in an Arkansas lawsuit arising out of an automobile accident that occurred in Arkansas. ***Id.*** at *1. During the course of that representation, the Arkansas attorneys sent two letters to a Memphis hospital and trauma center requesting information regarding treatment the plaintiff had received there. ***Id.*** The hospital later sued an insurance company in a Tennessee court regarding its hospital lien for the medical services received by the plaintiff, and the insurer filed a third-party complaint against the Arkansas attorneys. ***Id.*** When considering whether it was appropriate for a Tennessee court to exercise personal jurisdiction over the Arkansas attorneys, we explained that "[t]he Due Process Clause requires 'fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign.'" ***Id.*** at *2 (quoting *Burger King Corp.*, 471 U.S. at 472). We quoted the following explanation from *Burger King Corp.*:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities[.] And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.
> . . . .
> In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958):
>
>> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

-6-

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person[.]" Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at \*4-5 (quoting *Burger King Corp.*, 471 U.S. at 472-76) (internal citations omitted). Applying those principles to the Arkansas attorneys, we concluded that their contacts with Tennessee were insufficient to justify exercising specific personal jurisdiction. *Id.* at \*6. They did not conduct business or advertise in Tennessee, and their only contacts with Tennessee were the two letters they sent to the hospital and trauma center in the course of representing the plaintiff. *Id.* "These mailings alone [did] not constitute sufficient contact with Tennessee to find that the Attorneys ha[d] 'purposefully availed' themselves of conducting activities in Tennessee." *Id.* We noted that the letters were written in furtherance of representing the Arkansas plaintiff against the driver "and not to conduct business in Tennessee 'invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson*, 357 U.S. at 253).

Turning now to the present case, we similarly conclude that the nature and quality of the Attorneys' contacts with Tennessee cannot support the assertion of personal jurisdiction over them in this case. They did not purposely establish significant contact with Tennessee or purposefully avail themselves of the privilege of conducting activities here in order to invoke the benefits and protections of our laws. Rather, the Attorneys had isolated and random contact with Plaintiff in Tennessee by virtue of their representation of North Carolina clients in a lawsuit pending in North Carolina concerning activities that occurred in North Carolina. The Attorneys' fortuitous contacts with Plaintiff in Tennessee are simply not sufficient to enable us to conclude that they should have reasonably anticipated being haled into court in Tennessee. *Gordon*, 300 S.W.3d at 647. Therefore, the Attorneys lacked sufficient minimum contacts with the State of Tennessee to justify the exercise of personal jurisdiction. Because Plaintiff failed to establish a prima facie case for personal jurisdiction, the chancery court's decision to grant the Attorneys' motion to dismiss is affirmed.

### B. Appointment of an Attorney and Interpreter

Next, we will address Plaintiff's argument that the trial court erred in failing to appoint an attorney and an interpreter for him. "There is no absolute right to appointed counsel in a civil case." *Joiner v. Carter*, No. M2003-02248-COA-R3-CV, 2007 WL 1860706, at *1 n.1 (Tenn. Ct. App. Jun. 27, 2007) (citing *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989)). In fact, "[i]n most civil proceedings, a litigant has no constitutional right to appointed counsel." *Lyon v. King*, No. M2007-01156-COA-R3-PT, 2008 WL 490657, at *4 (Tenn. Ct. App. Feb. 22, 2008). A decision regarding whether to appoint counsel is well within the discretion of the trial court and may only be overturned upon a showing of an abuse of discretion. *White v. Bacon*, No. M2004-02110-COA-R3-CV, 2006 WL 211810, at *4 (Tenn. Ct. App. Jan. 26, 2006) (citing *State v. Rubio*, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987)). Plaintiff does not point to any fact or authority that would lead us to conclude that the chancellor abused his discretion in failing to appoint an attorney for him.

Likewise, "[a]ppointing an interpreter is a matter of judicial discretion." Tenn. Sup. Ct. R. 42, § 3(a). "It is the responsibility of the court to determine whether a participant in a legal proceeding has a limited ability to understand and communicate in English." *Id.* In this case, the trial court denied Plaintiff's request for an interpreter to be appointed for the hearing upon finding "no evidence that the Plaintiff does not understand the English language, either written or spoken." We find no abuse of discretion in this decision. Plaintiff had filed a separate motion in the trial court regarding his work assignments at the prison, and, in an apparent attempt to demonstrate his ability to perform such assignments, he filed numerous affidavits in which his former supervisors stated that Plaintiff "communicates well" and "understand[s] English." One supervisor stated, "I . . . have no problem understanding [Plaintiff] nor have I ever had to repeat anything for him." Another officer who worked with Plaintiff in the prison law library stated, "[Plaintiff] is well versed in legal affairs and has explained legal situations to me using the English language in a way I could easily understand." Considering these affidavits, submitted to the trial court by Plaintiff himself, in addition to the clarity of his filings in this case, we find no abuse of the trial court's discretion in denying Plaintiff's request for an interpreter.

### C. Other Arguments

Finally, Plaintiff argues that the legislature and the United States and Tennessee Constitutions "clearly intended" to permit the litigation in this case. Plaintiff's brief does not further explain this argument, but it states that he intended to amend his brief at a later date. We find no merit in this issue as presented.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Young Bok Song, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.